## Case No. 6,808.

### HOYT v. CURTIS.

[3 Betts, C. C. MS. 71.]

Circuit Court, S. D. New York. June 26, 1844.

CUSTOMS DUTIES—COMPENSATION OF COLLECTOR—RESIGNATION—COMMISSIONS.

[1. Act March 2, 1799, § 2 (1 Stat. 706), provided that the compensation of collectors of customs at ports of entry should consist of certain commissions on all moneys received by them. Act May 7, 1822, § 9 (3 Stat. 695), provided that whenever the "emoluments" of the collector of a named port should exceed a certain sum the excess should be paid into the treasury. *Held,* that "emoluments" herein cover commissions on the collection of duties bonded by the collector; and he can therefore make title to, or claim interest in, commissions on duty bonds only so far as to mingle them with all his other emoluments in order to secure the maximum granted him by law.]

[2. Act Cong. May 8, 1792, § 4 (1 Stat. 274), relative to the compensation of customs officers, provides that, "whenever a collector shall die, the commissions to which he would have been entitled, on receipt of all duties bonded by him, shall be equally divided between his legal representatives and his successor in office, whose duty it shall be to collect the same." Act March 2, 1799 (1 Stat. 709), extends this provision in favor of a collector who resigns. *Held,* that the commissions so granted to a collector who has resigned is compensation for his acts in and about taking the bonds, and cannot be deemed compensation for his turning over his books and papers to his successor, and for his labor in making up his accounts after his resignation, both of which he is required to do by law as an essential part of his official duty.]

[3. It follows, therefore, that where a collector who has resigned sues his successor to recover the half of commissions on duties bonded by him before his resignation, the burden is upon him to show that the emoluments received by him while in office did not reach the maximum fixed by law as his compensation, failing which he is not entitled to recover.]

[This was an action at law by Jesse Hoyt against Edward Curtis.]

BETTS, District Judge. This cause comes up on motion for a new trial on a case made. It was assumpsit by the late collector against the collector now in office, to recover one-half the commissions received by the defendant on duty bonds given during the official period of the plaintiff, and falling due and collected since the defendant came into office. It appeared in proof that the half commissions amounted to $1,779.89, which had remained in defendant's hands, not paid over to the United States, and the total, with interest added, is $1,993.47, and that defendant's accounts, charging the United States and crediting himself these commissions, had been passed and allowed at the treasury. The action is founded upon the fourth section of the act of congress of March 2, 1799, which provides that, whenever a collector shall die or resign, the commissions to which he would

have been entitled, on the receipt of all duties bonded by him, shall be equally divided between the collector resigning or the legal representative of such deceased collector, and his successor in office, whose duty it shall be to collect the same; and for this purpose all the public or official books, papers, and accounts of the collector resigning or deceased shall be delivered over to such successor. 3 [Bior. & D.] Laws, 241 [1 Stat. 709].

The plaintiff produced the letter of the secretary of the treasury of February 27, 1841, apprising him that the president had accepted his resignation of the office of collector to take effect agreeably to its tenor, on his being notified of the appointment of his successor. The resignation took effect on the 2d of March, 1841. He also produced a letter of the defendant in which he declined paying over these commissions to the plaintiff, because an intimation had been received from the treasury department that his resignation had not been accepted, and that it is therefore supposed that he has no just claim to the commissions. It was proved that instructions were given the defendant by the secretary of the treasury to retain these moneys, and not pay them to the plaintiff, and that similar instructions had been given his predecessor, the immediate successor of the plaintiff, in relation to other like commissions. It was admitted that the United States at the last term of the court recovered a verdict against the plaintiff on his accounts as collector to an amount much larger than the claim in this cause, the judgment upon which remains unsatisfied, and also that the United States withheld from the plaintiff any credit or account of those commissions.

The instructions of the court to the jury, now alleged to be contrary to law, were (1) that the directions of the secretary of the treasury to the defendant to withhold payment of these commissions to the plaintiff were of equal obligation upon him as if given by the comptroller; (2) that the plaintiff could not recover in this action without proving that his compensation as collector, limited by the acts of congress, had not been received by him; that he had no other right or title to these commissions than as part of his fees and emoluments necessary to make up such compensation. If the charge of the court in the last particular was correct, the verdict must stand, although it may have erred on the first point, and accordingly the objections to the instructions under the second head will first be considered.

The propositions laid down in the plaintiff's points, and maintained on the argument, are that the one-half commissions allowed by the act of congress to a collector after his resignation are not given him as officer and for services performed when collector, but are intended to compensate him for transferring books, vouchers, etc., and making up his accounts, after he ceases to be an officer; that the defendant is not the agent of the

government in allotting these commissions, but the agent or trustee of the plaintiff alone, and that the treasury, under the law, never had or could have any title or interest in these commissions. For the defendant it was insisted that, if the liability of the defendant is established, the charge of the court that the plaintiff was not entitled to recover these commissions, without showing affirmatively that they were necessary to make up the maximum compensation allowed him by the act of 1822, was correct. But it was insisted that the defendant being a public officer, and that duty bonds collected by him being public moneys received by him in his official capacity, he is not liable to an action in behalf of individuals to whom any part of such moneys may by law be appointed to be distributed or paid.

A review of the legislation of congress on the subject will determine with exactness in what character an outgoing collector is allowed half commissions upon certain classes of duty bonds; and a collation of the enactments will afford a clearer illustration of the intent of congress than any course of general reasoning could effect. At the first session of the first congress under the constitution, July 31, 1789, a revenue system from imports was devised providing for its administration substantially the same agencies, and with like powers and privileges attached to them, that have continued to be employed to this day. A collector, naval officer, and surveyor were to be appointed at all the principal ports of entry and delivery, their powers and duties were marked out, and they were to be compensated by fees (and a commission to the collector of 1 per cent. on all moneys received and paid into the treasury), and by a share of all fines, penalties, and forfeitures. Section 29 specified the fees and commissions to be received; and section 38, the proportion of fines and forfeitures. 2 [Bior. & D.] Laws, 26 [1 Stat. 44]. This act was repealed August 4, 1790, 2 [Bior. & D.] Laws, 131 [1 Stat. 145], but the new act embodied most of the features of the first, and in respect to the compensation of collectors, etc., deviated from it only by reducing the commissions for collections to three-fourths of 1 per cent. on the amount of moneys received. instead of 1 per cent. on the amount received and paid into the treasury, 2 [Bior. & D.] Laws, 166 [1 Stat. 172]. The act of May 8, 1792, relative to the compensation of certain officers employed in the collection of the duties of import and tonnage, added to the compensation of classes of those officers. Section 1. Section 2 directed the allowance of three-fourths of 1 per cent. to the collectors of Philadelphia and New York, to cease on the last day of June thereafter, and provided that "instead thereof they shall, after that time, be entitled to one-half of 1 per cent. on all such moneys by them respectively received." Section 4 introduced an original provision: "That whenever a collector shall

die, the commissions to which he would have been entitled, on the receipt of all duties bonded by him, shall be equally divided between the legal representatives of such deceased· collector and his successor in office, whose duty it shall be to collect the same; and for this purpose the said representatives shall deliver over to such successor, all the public or official books, papers, and accounts of the said deceased." 2 [Bior. & D.] Laws. 297–299 [1 Stat. 274].

The then existing duty acts were repealed and substituted by the act of March 2, 1799,— 3 [Bior. & D.] Laws, 236–241 [1 Stat. 706],— which yet remains in force as the substitution of all subsequent laws of imports and on the same day congress passed "An act to establish the compensation of the officers employed in the collection of the duties on imports and tonnage and for other purposes," —Id. Section 2 established the fees to be received in lieu of "the fees and emoluments heretofore established," but in substance essentially the same as before allowed. It is also allowed to the collector of New York one-quarter per cent. on all moneys received on duties and tonnage,—3 [Bior. & D.] Laws, 239, 240 [1 Stat. 706].—and then section 4 recreated section 4 of the act of May 8, 1792. with the addition only of applying the provision to collectors who shall die or resign,— 3 [Bior. & D.] Laws, 241 [1 Stat. 709]. The concurrent act had also allotted to collectors, etc., the same share in fines, penalties, and forfeitures as were given by preceding statutes. 3 [Bior. & D.] Laws, 223, § 91 [1 Stat. 697].

This scheme of compensation allotted to the collectors the entire amount received by them from the sources indicated, and no doubt, in the districts of large importations,— this in particular,—the aggregate must have been very large. Congress interposed, first, by the act of April 30, 1802, and next by that of May 7, 1822, and finally by the act of March 3, 1841, to restrict and limit the actual compensation realized by collectors; but it is to be remarked, as perhaps peculiar to this legislation, first introduced in 1802, that the charges for fees, commissions. etc., are reduced so as to yield no more than the compensation granted, but, being left in substance as before, only the officer is required, when his receipts attain a certain amount, to pay the excess, if any, into the treasury. So far as fees, etc., are concerned, the government thus augments the revenue from duties by taking to itself a large sum beyond the imports. and now no longer deemed necessary to cover the expenses of collection, for which purpose alone such fees. etc., were originally appointed; and in respect to this officer all such extra or surplus fees are the same as if abolished. The purpose of congress to withdraw these sums from the allowances before received by collectors, etc., and constitute them a part of the general income and funds, affords a key to the mean-

ing of the enactments in that behalf, and is not to be lost sight of in giving a construction to the limitation clauses.

It is plain that the act of 1802 was designed to regulate the entire subject of compensation to collectors. It was in amendment of the existing laws. The first section added to the fees and emoluments of one collector a salary: the second took from another the salary assigned to the office; and the third declared whenever the annual emoluments of any collector of the customs, after deducting expenditures, shall amount to more than $5,000, the surplus shall be accounted for and paid into the treasury, excepting, however, his interest in fines, forfeitures, and penalties. 3 [Bior. & D.] Laws, 495 [2 Stat. 172]. Congress does not act upon the sources of the emoluments; those are left as before. But it seems to me no authorized construction of statutes could regard this act as allowing a collector in office to receive his commission on bonds, irrespective of the amount of emoluments already realized from other branches of income. So when the provisions are embodied in the act of May 7, 1822,—6 [Bior. & D.] Laws, 78–81 [3 Stat. 695],—the language employed by congress manifestly imports that the whole subject of compensation to collectors was definitely regulated. Section 7 established new rates of commissions in lieu of those then allowed by law. Section 8 provided salaries to various collectors, etc., in addition to their emoluments. Section 9 directed whenever the emoluments of the collector of New York, etc., shall exceed $4,000 in any one year, after deducting expenses, the excess shall be paid into the treasury. Section 12 requires the collector to account for all his emoluments, etc. This court, in April term last, decided that the word "emoluments" covered also all fees and perquisites allowed by law. U. S. v. Hoyt, [Case No. 15,409]. Sections 11 and 18 reserve the fines and forfeitures to the collector as heretofore, and sanction an allowance, not exceeding $400 annually, for services performed by a collector for the United States in another office or capacity.

This recapitulation of the legislation of congress on the subject seems to me to demonstrate that it was designed to fix with precision the amount of compensation a collector would receive out of moneys derived from imports and tonnage, and to interdict that amount being exceeded from any allowance of salary, fees, or commissions. The exception of fines and forfeitures from the limitation is strong evidence that congress intended the prohibition should embrace every other branch of income derived from the revenue. The limitation act being already adjudged in this court to withdraw every allowance, by way of fees or emoluments, that would elevate the compensation over the maximum fixed by congress, it could not be maintained, as already in-

timated, that the collector in office could make any title to the commission on duty bonds, other than to mingle or estimate them with all his other emoluments in order to secure the maximum granted him by law. So soon as that maximum is reached, the surplus in his hands becomes part of the funds to be accounted for and paid over to the government.

It would seem hardly to admit of argument, in view of the plain scope and object of the legislation referred to, that the grant of commissions on duty bonds might be construed as an independent provision, and not brought within the restrictions of the limitation acts in respect to collectors in office. What is there to discriminate the case of a retiring collector from that of an acting one? Will the provision justify the construction that the half commission is granted in reward of services in making up accounts, or for passing over books, accounts, etc., to his successor? It will be perceived that the first two acts (1789, 1790) only authorized collectors to take commissions from moneys received, and the compensation act of 1799 was designed to remedy a hardship that might befall the estate of a collector, where, after having performed the most critical and responsible portion of the services and secured the duties by bond, he dies before the money is received, thus leaving his representatives liable for his acts in taking the bonds, without any corresponding compensation or indemnity.

Congress considered such services whilst in office justly deserving one-half the commission given on their completion, by actual collection of the money, and that it was unjust to permit the new collector to take to himself the reward earned by his predecessor. It would be a strained reading of the law to understand this half commission to be bestowed in consideration of the surrender of books and vouchers, which it is to be remembered are not the private property of the collector, but belong to the public, as part of the appurtenances of the office, and, if not transferred under existing regulations, would be subject to the direction of the secretary of the treasury under other provisions of the law. It might be a politic proviso to stimulate the prompt and full surrender of all such documents by postponing the allowance of the commission till it was made, but the law in no way justifies the interpretation that such surrender was the consideration, in whole or in part, for the allowance.

This could not be so, because those books or vouchers would afford no aid to the government in enforcing the collection of the bonds. They might be serviceable in testing the correctness with which the collector had performed his duty, and would accordingly only be of importance to the treasury in adjusting the relations of the collector with the government, and determining

whether the per centum was due him or equitably belonged to the treasury. There would, then, be no reasonable ground to infer that a compensation so considerable in its character was conferred in consideration of a retiring collector fulfilling towards the government a duty necessarily incident to the office he relinquishes, that of "delivering over to his successor all the public or official books papers and accounts" in his hands. Nor is there anytning in the law authorizing the inference that this allowance is intended to remunerate the labor and expense of preparing his accounts, by a collector, after he resigns.

The second section of the compensation act of 1799—3 [Bior. & D.] Laws, 241. [1 Stat. 706]—directs collectors, etc., to make up and transmit, within 40 days after the last day of December annually, accurate accounts of all fees and emoluments received by them. The eleventh section of the compensation act of 1822, if it does not supplant the former law, empowers the secretary of the treasury to demand such accounts at such times and in such forms as he may prescribe. 7 [Bior. & D.] Laws, 80 [3 Stat. 695].

It is, then, a part of the duty of an acting or retiring collector to make up his accounts with the treasury, no less imperative than to discharge any other duty appertaining to his office. Making up of his accounts after resigning, for the period he was in office, is no more a new and distinct service for which he can claim compensation, than is the paying over the funds remaining in his hands. He is only thus completing the duties, and a necessary and component part of his official services, assumed by and cast upon him, when he undertook the office.

The act of 1822 also answers the argument that these commissions cannot be regarded as part of the emoluments of collectors, because the periods fixed for accounting for fees and emoluments are limited to 40 days after the close of the year, and these commissions may not accrue to a resigning collector within several months subsequent, for the secretary of the treasury is required to prescribe regulations that are proper to meet every case of accounting and the defect. if any exists, is only in the omission to frame and publish such regulations. That omission cannot vary the construction of the laws in this behalf.

The opinion of the attorney general, referred to in Op. Attys. Gen. U. S., 1262 in the Case of Mr. Henshaw, does not militate against this view of the case. Indeed, it seems to have been the opinion of that officer that the fourth section of the act of 1799 is repealed by the compensation act of May 7, 1822; but yielding to the usage of the treasury department, as affording an authoritative construction adverse to his judgment, he advises the department to continue its former practice, and to consider both acts in force. There is nothing in his

opinion indicating that Mr. Henshaw claimed the commissions under the act of 1799, the extra and beyond the limitation to his compensation fixed by the act of 1822, but the fair construction of it is that those commissions were claimed or retained in order to make up his maximum compensation.

If the facts of the case presented the question in the other point of view, I should feel constrained to adopt the conclusion of the attorney general as a better exposition of the meaning of congress than the practice of the treasury department, and should unhesitatingly decide that in respect to emoluments or compensation of any name (other than fines, etc.), derivable by collectors under antecedent acts, the gross amount could not be allowed to exceed the limitation fixed by the act of 1822.

The case of Bates v. Drury [Case No. 1,100] affords no aid in solving the question now presented, other than the recognition of the fourth section of the act of 1799, as still a subsisting part of the law. This is not the controverted point in the present case, and, if it was, I see no reason to question that the section is still in force, and supplies one of the sources from which collectors derive their compensation; but the moneys so obtained make up a portion of the entire emoluments, and are in their hands to be accounted for pursuant to the provisions of the act of 1822, the same as other fees and perquisites. Another objection to the instructions given by the court is that it imposed on the plaintiff the burden of providing that the money sued for was necessary to make up his maximum compensation, whereas it is matter of defense to be established by the other side, to show that he was already fully paid all he could legally demand.

The posture of this case is different from what it would be if the defendant was liable to the plaintiff for such compensation, in which case the burden of proof might be on him to show its satisfaction. But he is merely the depository of public moneys, and, if he has any personal relation to the parties, stands in the character of a trustee, or, rather, stakeholder, between the plaintiff and the government in respect to this fund. The plaintiff is accordingly bound to establish a valid title to this money before he can compel the defendant to pay it over to him. He can have no higher title to it against the defendant than he has against the government, and, if between himself and the treasury department the right to it is not clearly in him, he has no ground of action to reclaim it from the defendant.

It has been shown that, upon the laws as they stand, the plaintiff could not, in his accounts with the treasury, retain these commissions except only as a necessary part of his limited compensation. They belong to him in no other way. When, then, he proceeds against his successor to recover

public moneys out of his hands, he can clearly succeed only by proving that the public is indebted to him the amount he seeks, and that it is money which, if collected by him, he would have been entitled to retain. The case is no wise barred by the fact that the defendant charged these commissions against the government, and received credit for them at the treasury as due and payable by him to the plaintiff. The form of rendering and paying his accounts would determine nothing as to the point litigated; but, aside of that, the secretary of the treasury forbid the payment of the money to the plaintiff until his right to it should be decided at law.

This, then, compels the plaintiff to proceed upon his legal rights alone, and, as I understand the law, he has failed to show a title in himself to these moneys as against all other parties and the liability of the defendant to him therefor. His right upon the law, as I understand it, is no way enlarged by his resignation. The commission is appointed by law to the collector, in reward of services rendered as collector, and the consideration or object of the allowance is not affected by the payment being made after he ceases to hold office. Nor does the defendant become responsible upon any personal relationship between the parties. He was no agent of the plaintiff by his appointment or by designation of law, in opposition to or paramount to the authority of the treasury department. The whole face of the bond is due to the government. It is made subject, on being paid, to a certain commission which the law says "it shall be the duty of the collector in office to collect." This collecting, however, can be nothing more than subtracting the per centage from such public moneys while in his hands. The act does not direct the collector to pay such commissions to his predecessor, and he cannot accordingly be regarded as standing in relation of a private agent to such predecessor, or bound to account to him for the money.

Supposing the government refuses to credit these commissions to his account current, claiming the control of them as part of the public moneys, could he be allowed to set up the right of his predecessor in bar of such authority, and thus intercept the rights of the government as against his predecessor? Manifestly he would be bound to pay over the entire fund as being part of the revenue collected by him. So if his accounts are nominally approved, with the allowance of a credit of the commissions to the resigned collector, the secretary of the treasury would have the power to revoke such approval so far as to require that the money should not be paid out by the collector until a clear right to it at law was established by his predecessor. The defendant could not be regarded as holding it merely as money had and received, in the ordi-

nary acceptation, for the plaintiff, but as a public officer, having it in deposit for the government or the plaintiff, whichever had the legal right to it. Upon these views of the case, I am of opinion that the law is against the right of the plaintiff to recover, and that the motion for a new trial must be denied.